# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRANSCONTINENTAL GAS : <br> PIPE COMPANY, LLC, : <br> : <br> **Plaintiff** : <br> : <br> v. : <br> : <br> A PERMANENT EASEMENT : <br> FOR 0.414 ACRES AND A : <br> TEMPORARY EASEMENT FOR : <br> 2.450 ACRES OF LAND IN : <br> SALEM TOWNSHIP, LUZERNE : <br> COUNTY, PENNSYLVANIA : <br> TAX PARCEL NO. : <br> .55-N4-A-13/TRACT 1, : <br> DONALD E. & JOANNE E. : <br> BOWER, et al., : <br> : <br> **Defendants** : | Civil Action No. 3:09-cv-00501 <br><br> (Chief Judge Kane) |

## **MEMORANDUM**

Pending before the Court is Defendant Donald E. Bower and Joanne E. Bower's motion for contempt. (Doc. No. 50.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will deny Defendants' motion.

## I. BACKGROUND

On March 18, 2009, Plaintiff Transcontinental Gas Company filed a complaint in condemnation for the taking of rights of way and easements ("Rights of Way") on the Bowers' property in order to install a pipeline loop. (Doc. No. 1 ¶ 2.) Also on March 18, 2009, Plaintiff filed an emergency motion for preliminary injunction, seeking emergency access to the proposed easement areas on the Bowers' property in order to clear trees before April 1, 2009. (Doc. No. 5

1

at 3.) On March 23, 2009, Judge Thomas Vanaskie entered a stipulation and order ("the Order"), in which the Bowers granted Plaintiff a right of access to the property for the purpose of felling trees. (Doc. No. 17 ¶ 1.) The Order also reflects the Bowers' intent to file a non-coal surface mining application with the Pennsylvania Department of Environmental Protection ("DEP"). (Id. ¶ 6.) Plaintiff reserved the "right to comment, review, object and intervene in the application process," but Plaintiff's comments, review, objection, and intervention were to "relate solely to its pipelines (existing and proposed), the Rights of Way and the existing easements" Plaintiff holds on the Bowers' property. (Id.)

On June 5, 2009, Plaintiff filed an emergency motion for preliminary injunction for immediate possession. (Doc. No. 23.) Plaintiff's motion sought immediate possession of the Rights of Way sought on the Bowers' property in order to complete the pipeline project by November 1, 2009, pursuant to an order from the Federal Energy Regulatory Commission. (Id. ¶ 2.) On June 15, 2009, the Bowers filed a brief in opposition to Plaintiff's motion, and a motion for contempt. (Doc. Nos. 32, 33.) In their motion for contempt, the Bowers alleged that a June 5, 2009, letter from Plaintiff's consultant violated the Order because the letter made comments unrelated to Plaintiff's interests. (Doc. No. 33 ¶¶ 6-8.) On June 17, 2009, the parties submitted a stipulation regarding the possession. (Doc. No. 40.) According to the stipulation, Plaintiff agreed to pay $500,000 to the Bowers as nonrefundable compensation for the property Plaintiff sought to condemn. (Id. ¶ 2.) The stipulation also states that the Bowers had no objection to Plaintiff's emergency motion for preliminary injunction for immediate possession. (Id. ¶ 6.) Further, the Bowers agreed to withdraw their motion for contempt against Plaintiff. (Id. ¶ 8.) On June 18, 2009, Judge Vanaskie entered an order granting Plaintiff's motion for a preliminary

injunction. (Doc. No. 41.) The order incorporates by reference the parties' stipulation filed on June 17, 2009. (Id. ¶ 3.) The Bowers filed a motion to withdraw the motion for contempt, which was granted on June 23, 2009. (Doc. Nos. 43, 44.) On June 29, 2010, this matter was reassigned to this Court from Judge Vanaskie.

On September 2, 2010, the Bowers filed a motion for contempt, alleging that Plaintiff violated the Order by submitting four letters to the DEP which contained comments unrelated to Plaintiff's interest. (Doc. No. 5.) The Bowers filed a brief in support of their motion on September 8, 2010. (Doc. No. 51.) On September 22, 2010, Plaintiff filed a brief in opposition, (Doc. No. 53), and the Bowers filed a reply brief on October 5, 2010 (Doc. No. 54).

## II. STANDARD OF REVIEW

To hold Plaintiff in civil contempt, the Bowers must establish: "(1) that a valid court order existed, (2) that [Plaintiff] had knowledge of the order, and (3) that [Plaintiff] disobeyed the order." Roe v. Operation Rescue, 919 F.2d 857, 871 (3d Cir. 1990). The Bowers have "a heavy burden to show [Plaintiff] guilty of civil contempt." Quinter v. Volkswagen of America, 676 F.2d 969, 974 (3d Cir. 1994). The Bowers must show that Plaintiff is guilty of contempt by clear and convincing evidence. (Id.) Willfulness is not a necessary element of civil contempt, and evidence regarding good faith does not bar the conclusion that Plaintiff acted with contempt. Robin Woods, Inc. v. Woods, 28 F.3d 396, 399-400 (3d Cir. 1994). A contempt motion "shall not be granted where there is 'ground to doubt the wrongfulness of' the respondent's conduct." Littlejohn v. Bic Corp., 851 F.2d 673, 683-84 (3d Cir. 1988) (citations omitted).

## III. DISCUSSION

The parties do not dispute that the first two elements of civil contempt are satisfied here.

The court's stipulation and order is a valid court order, and Plaintiff had knowledge of the order. The parties do disagree on whether the Bowers have met their burden of proof in demonstrating by clear and convincing evidence that Plaintiff violated the Order. (Doc. No. 53-2 at 4.) The Bowers take issue with comments in four different letters sent by Plaintiff to the DEP. The Court will address each letter in turn.

### A.  Burcat Letter

The Bowers first argue that a comment in a letter sent by Joel E. Burcat of Saul Ewing, LLP to Tom Owen of the Department of Environmental Protection ("DEP") violated the Order because the comment had nothing to do with the pipeline. (Doc. No. 50 ¶¶ 6, 7.) Point 9 of the letter states:

> DEP's regulations require that a person may not allow a discharge from a mine into the waters of the Commonwealth without first obtaining a permit from DEP. 25 Pa. Code § 77.101. We understand that the application indicates a discharge from the proposed quarry without identifying that discharge or seeking permission from DEP for that discharge. *See* NPDES application regarding the discharge from the settling basin to the unnamed tributary on Phase HR4. Discharges could have an impact on pipeline operations. DEP should not permit this discharge without a permit.

(Doc. No. 50-5 at 4.)

Mr. Burcat states that discharges could contribute to erosion of the highwall adjacent to the pipeline and the stability of the pipeline. (Doc. No. 53-4 at 2.) Mr. Burcat also states that the Bowers' failure to provide the basic information required by the National Pollutant Discharge Elimination System ("NPDES") application left Plaintiff guessing as to the nature and location of the outfall. (Id.) The Bowers asked Joseph A. Martarano, an engineer, to review the comments

4

sent by Plaintiff to the DEP. The Bowers and Martarano assert that the fact that the discharge point was left off the application has no effect on the pipeline. (Doc. No. 50 ¶ 7; Doc. 54-2 at 2.)

Based on its review of competing affidavits, the Court cannot find by clear and convincing evidence that Attorney Burcat's written comment on behalf of Plaintiff constitutes contempt. The affidavit of Mr. Burcat is convincing evidence that Plaintiff believed the discharge on which it commented has the potential to impact the pipeline directly or indirectly and thus is sufficiently related to Plaintiff's interests. Therefore, the Court finds that Plaintiff is not guilty of contempt for Mr. Burcat's comment.

**B.      Sacchetti Letter**

Next, the Bowers assert that Plaintiff violated the Order in a letter from Mark Sacchetti, an engineer employed by Plaintiff, to the DEP on June 5, 2009. (Doc. No. 50 ¶¶ 8-11.) Sacchetti's letter states, in pertinent part:

> When considering the excavation of sand and gravel Transco seeks engineering detail and verification from a qualified engineer to assure stability of the pipeline and right of way will not be compromised as a result of proposed mining and excavation slopes. When considering a maximum slope and that slope's proximity to pipeline facilities a qualified engineer must include the following criteria in their evaluation: over burden associated with heavy pipeline equipment operating in the right of way, the weight of pipeline facilities, the tendency of non-consolidated earthen material to subside, the disturbances that may be imposed by nearby proposed blasting, and any other information deemed necessary by a qualified engineer.

(Doc. No. 50-6 at 3.)

The Bowers claim that in a previous letter sent by Sacchetti on February 13, 2009, Sacchetti stated that a slope of 1.5:1 was acceptable. (Doc. No. 50 ¶ 10.) The February 13, 2009, letter states, in pertinent part:

5

> In the absence of a geotechnical review of the soil conditions, Transco objects to any proposed sloping of soils in excess of 1.5:1, as this is a typical sloping requirement of OSHA in Type "C" soils. Any other suggested sloping grades from the north edge of the pipeline right of way must be substantiated by a geotechnical and engineering analysis for stabilizing and sloping plans.

(Doc. No. 50-7 at 2.)

Marcarato asserts that this letter became part of the Order and therefore Sacchetti should not have commented on the slope stability. (Doc. No. 54-2 at 3.) The Order states that the February 13, 2009, letter "reflects Transco's final review and analysis of the blasting and soil sloping on the Bower plans provided to Mr. Sacchetti for review. If Bower resubmits a plan to Transco for review, it will, within a reasonable time, review that plan for blasting and soil sloping using the same methods as in the February 13, 2009 report." (Doc. No. 17 ¶ 5.)

Sacchetti's June 5, 2009, letter clearly does not violate the Order's requirement that Plaintiff's comments relate solely to the pipeline and Rights of Way. The Court also finds that the letter to the DEP does not violate the Order's mandate that Plaintiff review the Bowers' subsequent plans using the same methods as those used in Sacchetti's February 13, 2009, letter. There are grounds to doubt the wrongfulness of Plaintiff's comment requesting assurances that the stability of the pipeline and Rights of Way would not be compromised. Therefore, the Court finds that Plaintiff cannot be found guilty of contempt as a result of Sacchetti's comment.

The Bowers also make a point of noting that Sacchetti sent copies of his letter, Burcat's letter, and a letter from the EarthRes Group to Salem Township "in what can only be seen as an attempt to some way impact zoning approval." (Doc. No. 50 ¶ 11.) Sacchetti responds that it his general practice to send copies of correspondence to the appropriate authorities where Plaintiff is

6

objecting to a proposal that could impact the safety and stability of its pipelines. (Doc. No. 53-5 at 3.) The Court finds that the Bowers have not proven by clear and convincing evidence that this action violated the Order. Therefore, Plaintiff is not guilty of contempt.

### C. Potter Letter

On June 5, 2009, William Y. Potter, P.G., submitted a letter to the DEP in regards to the Bowers' application. (Doc. No. 50 ¶ 12.) Potter was a Project Manager for EarthRes Group, Inc. ("ERG"), a company retained as a consultant for Plaintiff. (Id.) The Bowers argue that many of Potter's comments do not relate to Plaintiff's interests. (Id. ¶ 13.) The Court will address each comment in turn.

#### 1. Point 1

Point 1 of Potter's letter states: "Salem Township Zoning Hearing Board Findings of Fact (Item # 7) references a small noncoal permit (actively mined) on proposed mining area. This area should be shown on all maps as noted in the Module 6, 9 and 18 checklists completed for this application." (Doc. No. 50-8 at 2.) Martarano asserts that the permitted mine sites were shown on an exhibit and that the reference to the Salem Township Zoning Hearing Board was an attempt to disrupt the zoning approval. (Doc. No. 54-2 at 4.) The Court finds that the Bowers have failed to prove Plaintiff guilty of contempt by clear and convincing evidence. Plaintiff has an interest in determining whether mining activities had occurred or are occurring in proximity to the pipeline or Rights of Way. Additionally, the Court is not convinced that Potter's reference to the Salem Township Zoning Hearing Board was for the purpose of disrupting zoning approval. Accordingly, Plaintiff is not guilty of contempt for Point 1 of Potter's letter.

#### 2. Point 2

Point 2 of Potter's letter states, "Salem Township Zoning Hearing Board Findings of Fact (#11) 'Applicant has no intention to conduct operations near a gas line situate [sic] on the southern edge of the property.' Was 'near' qualified in the ZHB proceedings, and if so, in what way?" (Doc. No. 50-8 at 2.) Martarano's sole argument is, again, "it is believed that [Potter's] reference to the Salem Township Zoning Hearing Board was for the purpose of disrupting zoning approval." (Doc. No. 54-2 at 4.) The Court finds that the Bowers have failed to prove by clear and convincing evidence that this comment violated the Order. Plaintiff is not guilty of contempt for Point 2 of Potter's letter.

### 3. Point 3

Point 3 of Potter's letter states:

> In the General Information Form (GIF), question 6.0 asks if project will involve discharge of industrial wastewater or stormwater to a swale or groundwater, the applicant checked "No". Discharge from a quarry operation is an industrial discharge regulated under a National Pollutant Discharge Elimination System (NPDES) permit, which has been applied for in this application. Therefore, the "yes" box should be checked, and a description of the project should be attached per the instructions.

(Doc. No. 50-8 at 3.) The Bowers claim that this form has nothing to do with the pipeline. (Doc. No. 50 ¶ 14B.) However, the Court finds that Plaintiff's conduct in making this comment was not clearly wrongful. Plaintiff noted that a discharge in the mine area abutting the pipeline Rights of Way was not included on the form and requested that a description of the project be attached as required  Plaintiff's interest in the pipeline and Rights of Way is sufficiently related to Point 3. Because there are grounds to doubt the wrongfulness of Plaintiff's conduct, it will not be held in contempt as a result of this comment.

8

### 4. Point 4

Point 4 of Potter's letter states:

> Module 2 - NPDES discharge.
> - Point 001 & 002 should quantify discharge volumes, especially where groundwater will be encountered.
> - Point 002 - Details on sizing/capacity of the conveyance beneath SR11 leading to the Susquehanna River were not provided.
> - NPDES Point 003 should be added for settling basin shown discharging to the unnamed tributary on Phase HR4. The application anticipates a discharge from this basin, but a corresponding NPDES discharge point has not been applied for.

(Doc. No. 50-8 at 3.)

The Bowers claim that NPDES points, which are the locations where stormwater and pit water are discharged from the property, have nothing to do with the pipeline. (Doc. No. 50 ¶ 14C.) It appears that only the second and third bullet points of Point 4 are in dispute. Plaintiff has submitted an affidavit from Louis F. Vittorio, Jr. and Randall E. Wallett of ERG explaining the relation of Potter's comments to Plaintiff's interests. (Doc. No. 53-6.) Vittorio is ERG's Vice President and Principal Hydrogeologist and Wallett is a Project Manager in ERG's mining sector. (Id. at 2-3.)

Vittorio and Wallett aver that the second bullet point relates to Plaintiff's interests because, in the event of a storm, the "conveyance could underperform and result in retention of water, leading to erosion, saturation of unconsolidated material and unstable slopes in the unconsolidated material along the pipeline [Rights of Way] abutting the mine areas designated as 2SG-3HR." (Id. at 6.) Martarano asserts that the sizing of the conveyance can have no effect on the pipelines as it is located over a half mile from the pipelines. (Doc. No. 54-2 at 4-5.) The

9

Court doubts the wrongfulness of Plaintiff's comment requesting more information regarding a conveyance that Plaintiff believed had the potential to affect the pipeline. Thus, the Bowers have failed to prove by clear and convincing evidence that Plaintiff should be found to be in contempt as a result of the second bullet point in Point 4 of Potter's letter.

As for the third bullet point, Vittorio and Wallett assert that the Bowers' failure to add discharge Point 003 to the NPDES form added to Plaintiff's confusion regarding groundwater in the mine area abutting the pipeline Rights of Way. (Doc. No. 53-6 at 6.) Martarano asserts that the fact that this point was not listed on the NPDES form does not affect the pipeline in a technical way. (Doc. No. 54-2 at 4.) While this may be true, the Order did not require that Plaintiff's comments be solely technical in nature, and the Court finds that the third bullet point sufficiently relates to Plaintiff's interest in the pipeline and Rights of Way. Accordingly, Plaintiff is not guilty of contempt for Point 4 of Potter's letter.

    **5.    Point 5**

Point 5 of Potter's letter states that "Figure 6.1 does not show the NPDES locations as required by the Module 6 instructions and § 77.454." (Doc. No. 50-8 at 3.) The Bowers assert that "this has nothing to do with the pipeline." (Doc. No. 50 ¶ 14D.) Vittorio and Wallett respond that it was necessary to request that the Bowers provide this information in order to determine whether there would be an impact to the pipeline Rights of Way. (Doc. No. 53-6 at 7.) Martarano asserts that the discharge at issue was shown on other exhibits, and the fact that the discharge point was not shown on the NPDES form does not impact the pipeline. (Doc. No. 54-2 at 5.) Again, the Court finds that Plaintiff's comment regarding proper mapping of discharge points is sufficiently related to Plaintiff's interest in determining potential impacts on the pipeline

and Rights of Way. The Bowers have failed to show by clear and convincing evidence that Plaintiff is guilty of contempt as a result of Point 5.

### 6. Point 7

Point 7 of Potter's letter states:

> The unnamed tributaries crossing the site have been assigned unofficial names in some maps/narratives and noted as unnamed elsewhere. If there is not a 25 PA Code § 93 name, then the streams should be numbered as unnamed tributary #1, #2, etc. and consistently referred to as such in all narratives/maps. The use of unofficial stream names is confusing, and should comply with § 77.121(a)(4).

(Doc. No. 50-8 at 3.) Martarano asserts that the fact that unnamed streams were given unique names on some maps cannot have any impact on the pipeline. (Doc. No. 54-2 at 5.) Vittorio and Wallett assert that Plaintiff desired a clear identification of waterways so that "impacts of water flow and proposed waterway modifications can be evaluated to assess potential erosion and runoff water flowing near and/or crossing the pipelines." (Doc. No. 53-6 at 6-7.) The Court doubts the wrongfulness of Plaintiff's request for clear waterway identification. Plaintiff's interest in assessing the impacts of waterways on the pipeline and Rights of Way is sufficiently related to its request for consistent waterway identification. Therefore, Plaintiff is not held in contempt for Point 7 of Potter's letter.

### 7. Point 9

Point 9 of Potter's letter states that "Module 7.5 requests information on all active/inactive mine sites within 1,000 ft [of the pipeline]. Information regarding the existing small noncoal permit referenced in the ZHB proceedings should be shown here in accordance with § 77.410(a)(13)." (Doc. No. 50-8 at 3.) The Bowers assert that this "has nothing to do with the

11

pipeline." (Doc. No. 50 ¶ 14F.) Martarano adds that all permitted mine sites were shown on an exhibit; thus, the fact that a mine site was left off of Module 7.5 "can have no impact on the pipeline." (Doc. No. 54-2 at 6.) Again, the Court finds grounds to doubt the wrongfulness of Plaintiff's comment. The proper mapping of existing or historic mine sites within 1,000 feet of the pipeline is related to Plaintiff's interest in the pipeline and Rights of Way. Accordingly, the Bowers have failed to prove by clear and convincing evidence that Plaintiff is guilty of contempt for Point 9 of Potter's letter.

### 8. Point 13

Point 13 of Potter's letter states, "The Module 8.6 Hydrologic Assessment narrative states that groundwater will be encountered when mining sandstone and will be discharged to the glacial deposit quarry pit. This contradicts the discharge depicted for 4HR and in section 8.3a and should be clarified." (Doc. No. 50-8 at 4.) The Bowers argue that this statement is incorrect and has nothing to do with the pipeline. (Doc. No. 50 ¶ 14G.) Martarano adds that Module 8 is not contradictory, and therefore Plaintiff's comment was in error. (Doc. No. 54-2 at 6.) Vittorio and Wallett contend that the comment was necessary "due to the lack of clarity of the application relative to existing and predicted conditions along the south side of the permit and pipeline [Rights of Way]." (Doc. No. 53-6 at 8.) While Plaintiff's comment may have been in error in its contention that Module 8 was contradictory, the Court finds that the comment was related to conditions in the vicinity of Plaintiff's pipeline and Rights of Way. Thus, Plaintiff's comment did not violate the Order and Plaintiff is not guilty of contempt for Point 13.

### 9. Point 14

Point 14 of Potter's letter states that "The Module 9 Checklist shows the 'previously

mined areas' box unchecked with N/A. We are aware, however, that the applicant currently operates a small noncoal mine within the proposed permit area. The small noncoal permit noted in the operation narrative should be shown here as per § 77.310(a)(13)." (Doc. No. 50-8 at 4.) The Bowers contend that the fact that a box is not checked "has nothing to do with the pipeline." (Doc. No. 50 ¶ 14H.) The Court finds that there are grounds to doubt the wrongfulness of Plaintiff's comment. A request for the proper identification of existing mine sites within the vicinity of the pipelines and Rights of Way is sufficiently related to Plaintiff's interest. The Bowers have failed to show by clear and convincing evidence that Plaintiff is guilty of contempt for Point 14 of Potter's letter.

### 10. Point 15

Point 15 of Potter's letter states:

> The soil storage area is depicted on a steep slope in Phase 4HR, but the application has no E&S [erosion and sedimentation] features to contain runoff or to ensure the slope can support such a stockpile. Given the slope, stockpiling soil adjacent to delineated wetlands in this area could be dangerous or could jeopardize the wetland downslope from the pile. The stockpile area should not be permitted in 4HR per § 77.457 – 458."

(Doc. No. 50-8 at 4.) The Bowers contend that the fact that no erosion and sedimentation controls were provided "has nothing to do with the pipeline." (Doc. No. 50 ¶ 14I.) Vittorio and Wallett aver that "placing a large overburden stockpile on a steep slope from the stream and adjacent pipeline is a safety and environmental concern for Transco." (Doc. No. 53-6 at 9.) They add that the application provided no technical information in support of the decision to locate the stockpile there, or to mitigate the possibility of slope failure and erosion that could affect the pipeline and Rights of Way. (Id.) Martarano counters that the proposed stockpile was

13

to be located about 400 feet from the pipeline and therefore it "would be a stretch" to claim that it was a concern to Plaintiff. (Doc. No. 54-2 at 7.) Again, the Court doubts the wrongfulness of Plaintiff's comment. Even if the proposed stockpile was to be located 400 feet from the pipeline, the Court finds Plaintiff's concern reasonable and sufficiently related to its interest. Thus, this comment did not violate the Order and Plaintiff is not guilty of contempt for Point 15.

### D.  Vittorio and Wallett Letter

On June 15, 2010, Vittorio and Wallett submitted a letter to the DEP in regards to the Bowers' application. The Bowers claim that Plaintiff should be found guilty of contempt because four comments contained in the letter violate the Order. (Doc. No. 50 ¶¶ 15-18.) The Court will address each disputed comment in turn.

#### 1.  Point 2

Point 2 of Vittorio and Wallett's letter states:

> <u>Stablility of Unconsolidated Materials:</u> While an attempt was made to evaluate stability in unconsolidated materials, ERG finds the presented textual analyses to be inadequate and unrelated to the materials planned to be mined adjacent to Transco's pipeline. ERG understands that Cedar Rock simply observed the slopes within presumed unconsolidated materials existing along US Route 11 and considered the slopes stable as they had been in place "for a very long time". The observed slopes were minimally described, but are assumed to be vegetated due to their stated non-disturbed condition. During mining, the slopes cut into the unconsolidated materials adjacent to the pipeline will be unsaturated and non-vegetated. These factors are important in assessing slope stability and were not considered. Additionally, material samples, test pits or borings were not collected or performed to enable comparison of the observed slopes along Route 11 to the proposed mining area along the pipeline. Material composition can vary significantly throughout a site, especially in glacial till and river deposits. ERG recommends that a stability analysis of the unconsolidated material be conducted in 1SG and 1HR to verify the slope stability in response to mining and

blasting activities in the vicinity of the pipeline facility.

(Doc. 50-9 at 3.) The Bowers contend that Sacchetti's February 13, 2009, letter settled the issue of slope stability, yet Plaintiff brought up the issue again in Point 2. (Doc. No. 50 ¶ 16.) Vittorio and Wallett state that their comment raised concerns about the inadequacies of a geotechnical evaluation that was performed. (Doc. No. 53-6 at 10-11.) The Court finds that Point 2 certainly complied with the Order in that the comment clearly relates to Plaintiff's interest. Additionally, Point 2 does not violate the Order's mandate that Plaintiff review subsequent plans for soil sloping consistent with the methods used in Sacchetti's letter. Sacchetti's letter states that Plaintiff objects to proposed sloping in excess of 1.5:1 in the absence of a geotechnical review. (Doc. No. 50-7 at 2.) Nothing in Sacchetti's letter precludes Plaintiff from pointing out inadequacies in a geotechnical review. Thus, the Bowers have failed to prove by clear and convincing evidence that Plaintiff is guilty of contempt for Point 2.

### 2. Point 3

Point 3 of Vittorio and Wallett's letter discusses the minimum mining setback requirements for mining in unconsolidated materials. (Doc. No. 50-9 at 3.) The comment states that the setback for mining unconsolidated materials in the vicinity of the pipeline should conform to the relevant regulations. (Id.) The Bowers simply argue that Point 3 asks about slope stability, a matter they claim was settled in Sacchetti's February 13, 2009, letter. (Doc. No. 50 ¶ 16.) Vittorio and Wallett counter that Point 3 relates to the proper setback of unconsolidated materials from the pipeline and Rights of Way. (Doc. No. 53-6 at 11.) The Court finds that the Bowers have failed to prove by clear and convincing evidence that Point 3 violates the Order. Accordingly, Plaintiff is not guilty of contempt for Point 3.

### 3. Point 16

Point 16 of Vittorio and Wallett's letter states:

> Reclamation and Bonding: with the inconsistencies between the narratives and cross sections, the lack of detailed information on the 50' and 25' highwalls, and no detailed chronology of the mining sequence, ERG is concerned that reclamation cannot be completed along the pipeline in the event of a bond forfeiture given the 10-year bonding timeline proposal in the application. The proposed bonding in the application does not conform to DEP's new bonding rates and requirements.

(Doc. No. 50-9 at 5.) According to the Bowers, "this comment is not technical and has very little if anything to do with the pipeline." (Doc. No. 50 ¶ 17.) Vittorio and Wallett state that the bonds should be adequate in order for the DEP to complete reclamation near the pipeline. (Doc. No. 53-6 at 11.) The Court finds that the ability of the DEP to restore the land in the vicinity of the pipeline is related to Plaintiff's interest. Additionally, the Order did not require that Plaintiff's review be restricted to technical comments. The Bowers have failed to prove by clear and convincing evidence that Point 16 is unrelated to Plaintiff's interest. Therefore, Plaintiff is not guilty of contempt for this comment.

### 4. Point 17

The Bowers' final objection is to Point 17 of Vittorio and Wallett's letter. Point 17 states: "Setbacks Adjacent to Wetlands and Pipelines: the applicant does not show the required 100' setbacks from the wetlands along Bower Run adjacent to the Transco pipeline. Determination of benching schemes and resultant stability of the proposed benches will need to be assessed using the proper setbacks." (Doc. No. 50-9 at 6.) The Bowers contend that Point 17 "asks about wetlands that are no closer than 400 feet from the pipeline and has no bearing on the

pipeline." (Doc. No. 50 ¶ 18.)  Vittorio and Wallett responded that "the wetlands and wetland setbacks in the area of the pipeline are critical in determining highwall locations, benching schemes, and reclamation slopes near the pipeline Rights of Way." (Doc. No. 53-6 at 12.)  They go on to state that "the correct setbacks and corresponding maps and sections will allow a proper evaluation and protection of the pipeline." (Id.)  Martarano counters that because the wetlands are located over 400 feet from the pipeline, they are not "in the area of the pipeline." (Doc. No. 54-2 at 8.)  The Court finds that, even if the wetlands are located over 400 feet from the pipeline, Point 17 is related to Plaintiff's interest in protecting the pipeline and Rights of Way.  The Bowers have failed to show by clear and convincing evidence that Plaintiff is guilty of contempt for Point 17.

IV. **CONCLUSION**

The Bowers have failed to prove by clear and convincing evidence that any of the disputed comments violated the Order.  For the foregoing reasons, the Court will deny the Bowers' motion for contempt.  An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRANSCONTINENTAL GAS PIPE COMPANY, LLC, | : : : | Civil Action No. 3:09-cv-00501 |
| Plaintiff | : : | (Chief Judge Kane) |
| v. | : : | |
| A PERMANENT EASEMENT FOR 0.414 ACRES AND A TEMPORARY EASEMENT FOR 2.450 ACRES OF LAND IN SALEM TOWNSHIP, LUZERNE COUNTY, PENNSYLVANIA TAX PARCEL NO. .55-N4-A-13/TRACT 1, DONALD E. & JOANNE E. BOWER, et al., | : : : : : : : : : : | |
| Defendants | : | |

## **ORDER**

**NOW**, on this 31st day of January 2011, for the reasons set forth in the accompanying memorandum, it is **HEREBY ORDERED THAT** Defendant Bowers' motion for contempt (Doc. No. 50) is **DENIED**.

      S/ Yvette Kane
      Yvette Kane, Chief Judge
      United States District Court
      Middle District of Pennsylvania